We have granted the petition of AmSouth Bank, N.A. ("AmSouth"), for certiorari review of a judgment of the Court of Civil Appeals, which reversed a summary judgment entered in favor of AmSouth and against L.R. Lindsey. We reverse and remand.
This dispute arose out of the following facts: On July 23, 1987, Lindsey, a Texas resident, executed a promissory note in favor of AmSouth, a "national banking association that has its principal place of business in" Jefferson County. The note evidenced a $70,000 AmSouth loan, the proceeds of which Lindsey invested in "Sequoia Village Apartments, Ltd.," a limited partnership operating in Tennessee. This note, which was executed in Texas, provided that it should "be governed by and construed in accordance with the laws of the State of Alabama." It also provided that 16 payments were to be made semi-annually "at the office of [the] Lender at its address at AmSouth Bank, N.A. 1900 5th Avenue North, Birmingham, Alabama." Lindsey also executed a "Consent Agreement," in which he "consent[ed] to the execution and delivery by the Partnership to AmSouth Bank . . .of a Deed of Trust . . . whereby the partnership [would] grant to Lender a lien on the real property to be acquired by the Partnership." (Emphasis added.)
Lindsey sent nine scheduled payments to AmSouth. Eventually, however, he defaulted on the note, and AmSouth sued him in the Jefferson Circuit Court to recover the delinquent amount.
Lindsey moved to dismiss the complaint, contending that the "court lacked in personam jurisdiction." After the trial court overruled this motion, AmSouth moved for a summary judgment. Lindsey subsequently filed a "Motion to Dismiss or in the Alternative Motion for Summary Judgment," in which he renewed his contention that he was not subject to the power of the court. On November 5, 1993, the trial court granted AmSouth's summary judgment motion, awarding it $35,466.17, plus interest and costs, and by implication overruling Lindsey's counter motion. Lindsey appealed.
Citing Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals,622 So.2d 910 (Ala. 1993), the Court of Civil Appeals reversed the judgment of the trial court; it held that Lindsey's "contacts with the State of Alabama" were insufficient to support the exercise of jurisdiction over his person. Lindseyv. AmSouth Bank, N.A., 675 So.2d 1303, 1305
(Ala.Civ.App. 1994). We granted certiorari review to consider whether the ruling of the Court of Civil Appeals conflicts with this Court's opinion in Keelean v. Central Bank of the South,544 So.2d 153 (Ala. 1989). AmSouth argues that Keelean controls this case.
Keelean involved the following pertinent facts:
 "In November 1984, Holdco of Pinellas County, Inc. ('Holdco'), a Florida corporation, executed and delivered to Central Bank of the South ('Central Bank'), an Alabama banking corporation, a promissory note with a principal amount of $4,000,000. All negotiations regarding the promissory note took place either via telephone between representatives of Holdco and Central Bank, or in Florida between representatives of Holdco and Central Bank. The promissory note was guaranteed by several individuals, including appellants/guarantors, Robert G. Keelean, Albert Geiger, Jr., and Thomas V. Slaughter, who all delivered their continuing unlimited guarantees to Central Bank for the debts, obligations, and liabilities of Holdco. No evidence was presented that any of the individual guarantors participated in the promissory note negotiations.
 "Holdco defaulted on the promissory note. Central Bank filed suit in Jefferson County Circuit Court on the debt on August 11, 1987. Central Bank named Holdco, Keelean, Geiger, and Slaughter as defendants in th[e] action."
544 So.2d at 154-55 (footnote omitted). The three nonresident guarantors moved to dismiss the action for lack of personal jurisdiction. *Page 1307 
544 So.2d at 154. After the trial court had overruled their motion, this Court granted permission to appeal, pursuant to Ala.R.App.P. 5(a). 544 So.2d at 154.
This Court stated as an issue "[w]hether signing a guarantyout of state that will have economic effects in this State will satisfy Alabama's long-arm requirement that a defendant have contacts with Alabama sufficient for an Alabama court to . . . exercise jurisdiction over that party." 544 So.2d at 155 (emphasis added). The Court noted that Ala.R.Civ.P. 4.2(a)(2) — Alabama's "longarm rule" — authorizes the exercise of personal jurisdiction "so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States." 544 So.2d at 156. The limits of Rule 4.2 are defined, explained the Court, by the application of the following two-part analysis: "(1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and (2) the determination of the degree of contact that the nonresident defendant has with this state." 544 So.2d at 156-57.
At the outset of its analysis, the Court summarily stated: "It is easily conceivable that the primary obligor (Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources." 544 So.2d at 157 (emphasis added). Having noted that none of theguarantors had "participated in the promissory note negotiations," id. at 154, the Court, nevertheless, observed "that all guarantors were aware that they were guaranteeing payment of the debts and liabilities of a Florida corporation that was borrowing $4,000,000 from an Alabama corporation." Id.
at 157. "[C]learly," the Court stated, "the . . . guarantors should have foreseen the effects of their contracts of guaranty in . . . Alabama in the event of a default on the promissory note. A clear and firm connection exists between the execution of the promissory note, the subsequent default, the contracts of guaranty, and this litigation." Id. Consequently, the Court held "that the signing of the guarantees was sufficient to create the . . . contact required by the 14th Amendment to the U.S. Constitution . . . so that the Alabama court [had] inpersonam jurisdiction." Id. at 158. See also Millette v. O'NealSteel, Inc., 613 So.2d 1225 (Ala. 1992) (exercise of in personam
jurisdiction was proper over nonresident guarantors of a credit purchase of steel from a corporation whose principal place of business was in Alabama).
Although the Court of Civil Appeals cited Keelean, it relied on Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals,622 So.2d 910 (Ala. 1993), in which this Court affirmed a judgment of dismissal based on the absence of personal jurisdiction.Steel Processors involved the following facts:
 "Steel Processors [was] an Alabama corporation based in Mobile County. It received a request . . . for bid quotations on labor and materials for repairs to be made on a barge in Green Cove Springs, Florida, owned by Great Lakes Dredge 
Dock ('Great Lakes'). Steel Processors sent a bid . . . to Great Lakes in Oak Brook, Illinois, and was told to send a written quotation to Sue's Pumps. Steel Processors then sent a duplicate quotation . . . to Sue's Pumps in Pompano Beach, Florida. Dennis Scales, a Sue's Pumps employee, telephoned Steel Processors and informed William Prine, Jr., the president of Steel Processors, that its quotation for repair of the dredge had been accepted, and he advised Steel Processors to go forward with the work as outlined. Prine mailed to Sue's Pumps a copy of Steel Processors' shop order . . . indicating a total price of $146,801.13 for the repairs.
 "Steel Processors fabricated materials in Mobile County for the job, shipped the materials to the job site in Florida, and provided labor and equipment at the job site during the repair work on the barge. While repairs were being made, representatives of Sue's Pumps made several telephone calls to Prine at Steel Processors in Mobile County to discuss the project. After the job was completed, Prine sent an invoice . . . from Steel Processors to Sue's Pumps, c/o Great Lakes Dredge Dock in Green Cove Springs, Florida, requesting payment of $146,801.13 for the repair job. Sue's Pumps sent three checks, totalling *Page 1308 
$105,721.10, to Steel Processors by a privately owned interstate courier service.
 "Steel Processors filed a complaint and an amended complaint against Sue's Pumps, alleging that Sue's Pumps still owed it $46,801.13 under their work agreement. Sue's Pumps responded with a motion to dismiss, or, in the alternative, to quash service, alleging that it was a Florida corporation that did not do business in Alabama and was not subject to service of process in Alabama. The trial court granted the motion to dismiss."
622 So.2d at 911 (footnote omitted).
On appeal, this Court affirmed the dismissal. Applying the two-part test of (1) foreseeability and (2) "degree of contact" set forth in Keelean, 544 So.2d at 156-57, it held that the contractual relationship between Sue's Pumps and Steel Processors was insufficient to constitute either the degree of foreseeability of a lawsuit or the contact necessary to support the exercise of in personam jurisdiction over Sue's Pumps in this state. 622 So.2d at 914.
The Court acknowledged that jurisdiction may be premised on the existence of a contractual relationship if the contract is one that " 'ha[s] substantial connections with [the forum] State.' " Id. at 913 (quoting McGee v. International Life Ins.Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (emphasis added)). It noted, however, that federal courts had held that " 'a mere onetime purchaser of goods from a seller in a forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state.' " 622 So.2d at 913. The Court concluded that even the mailing of payments to Alabama did not establish the necessary nexus and foreseeability, where (1) the contractual relationship was initiated by the Alabama plaintiff, (2) "the repair project in Florida was developed by an Ohio business; [3] the repairs were made in Florida; and [4] no goods or services went out of Florida." Id. at 914.
In the present case, the Court of Civil Appeals analogized toSteel Processors and, gleaning from that case the proposition that "merely making payments to an address in the forum state is not a sufficient contact to establish personal jurisdiction," concluded that jurisdiction was lacking in this case. Lindsey v. AmSouth Bank, N.A., 675 So.2d at 1305. To be sure, this case, like Steel Processors, involved the mailing of payments to Alabama, but that is where the analogy ends. Unlike the relationship dealt with in that case, a one-time contract for the purchase of goods, the relationship created by the contract in this case extends for eight years. Steel Processors
expressly acknowledges that a contractual relationship will justify the exercise of personal jurisdiction where that relationship has a " 'substantial connection' " to the forum state. 622 So.2d at 913. Moreover, although the record does not affirmatively show that Lindsey approached AmSouth for the loan, and, consequently, initiated this relationship with the Alabama company, common experience suggests this scenario, which, of course, is the reverse of the one involved in SteelProcessors.
Also significant in this connection is the fact that the nonresident party here was the original obligor on the note, rather than a mere guarantor, as was the case in Keelean, where we stated: "It is easily conceivable that the primary obligor
(Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources." 544 So.2d at 157 (emphasis added).[1] The note also declared that it should "be governed by and construed in accordance with the laws of the State of Alabama."[2] (Emphasis added.) Under these facts, Lindsey should reasonably have foreseen that his default on the note would require him to defend an action in Alabama.
In this connection, Lindsey does not contend that he was unaware that AmSouth was *Page 1309 
doing business in Alabama. However, he objects to jurisdiction on the ground that he did not, he insists, subjectively know
that Alabama was AmSouth's principal place of business. We find this argument unpersuasive. The application of Lindsey's proposed rule would essentially require a corporation affirmatively and specifically to notify all potential
nonresident defendants of the location of its principal place of business in order to justify the exercise of jurisdiction,regardless of the degree of contact established by the nonresident defendant with the forum state.
We hold, therefore, on the basis of the contacts developed by Lindsey with Alabama in this case, that he is subject to the jurisdiction of Alabama's courts regardless of whether he actually knew that Alabama is, in fact, AmSouth's principal place of business. The judgment of the Court of Civil Appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, INGRAM, and BUTTS, JJ., concur.
[1] For purposes of jurisdiction and venue, a cause of action for default on a note arises in the forum in which the payment isdue. Seaboard Surety Co. v. William R. Phillips Co., 279 Ala. 510, 187 So.2d 264 (1966).
[2] In Keelean, we held that forum selection clauses were contrary to public policy and, therefore, invalid. 544 So.2d at 156. That holding does not extend to choice of law provisions, such as the one involved in this case.