822 So.2d 1180 (2001)
ANDALUSIA DISTRIBUTING CO., INC.
v.
SINGER HARDWARE CO., INC., and Sam Singer, Jr.
1001485.
Supreme Court of Alabama.
December 7, 2001.
Mark John Christensen, Andalusia, for appellant.
David A. Hatfield, Eufaula, for appellees.
MOORE, Chief Justice.
Andalusia Distributing Co., Inc. (hereinafter "ADC"), sued Singer Hardware Co., Inc., a Georgia corporation, and Sam Singer, Jr. (hereinafter sometimes collectively referred to as "Singer"), alleging that Singer owed it $108,013.48 on an open account or account stated for goods sold and delivered. The trial court dismissed the action for lack of personal jurisdiction over Singer Hardware and Sam Singer, Jr. The Singers are not residents of the State of Alabama and the trial court held that their contacts with the State of Alabama were insufficient for the application of Alabama's long-arm statute. We reverse and remand.
Singer Hardware owns convenience stores in Georgia. ADC provides goods to convenience stores. ADC supplied goods to Singer Hardware for its convenience stores in Georgia from 1997 until 2000. At some point, Singer Hardware failed to pay for goods that originated in Covington County and were sold to the corporation in Georgia by ADC. When ADC sued to collect payment, Singer claimed that Singer *1181 Hardware and Sam Singer, Jr., had insufficient contacts with Alabama to supply an Alabama court with jurisdiction over them. The Singers filed a motion to dismiss, alleging personal jurisdiction was lacking. After hearing arguments by counsel, the circuit court dismissed the action.
ADC argues that the continuing nature of the business transaction it had entered into with Singer and the fact that Sam Singer, Jr., as president of Singer Hardware, telephoned ADC in Alabama to set up the account indicate that it was foreseeable that Sam Singer, Jr., and his company would be haled into an Alabama court if he failed to pay for the purchases. Singer Hardware and Sam Singer, Jr., argue that the relationship between the parties was initiated by an ADC salesman while the salesman was traveling in Georgia, that no representative of Singer Hardware has ever set foot or done business in Alabama, and that ADC is simply reluctant to sue Singer in a Georgia court because it faces a fine for failing to register in Georgia as a foreign corporation.[1]
Rule 4.2(a)(2), Ala.R.Civ.P., sets out the circumstances under which an Alabama court has in personam jurisdiction over an out-of-state defendant. That rule sets out what are "sufficient contacts" for in personam jurisdiction. For determining whether personal jurisdiction exists over an out-of-state defendant, this Court has used a two-part analysis:
"1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
"2) the determination of the degree of contact that the nonresident defendant has with this state."
Keelean v. Central Bank of the South, 544 So.2d 153, 156-57 (Ala.1989) (overruled on other grounds by Professional Ins. Corp. v. Sutherland, 700 So.2d 347 (Ala.1997)). Keelean appears to support ADC's argument. In that case, this Court held that the Alabama court had personal jurisdiction over out-of-state guarantors of a loan made at an Alabama bank. Holdco of Pinellas County, Inc., a Florida corporation, had executed and delivered to Central Bank of the South, an Alabama corporation, a promissory note in the principal amount of $4,000,000, guaranteed by several Florida residents. All negotiations involving the note occurred either by telephone or in Florida. The guaranty contained a forum-selection clause that the Court held to be invalid. However, the forum-selection clause contained the following language:
"Guarantor acknowledges further that the negotiation, execution and delivery of this Guaranty constitutes the transaction of business within the State of Alabama and that any cause of action arising under this Guaranty will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Alabama for any cause of action arising out of or in connection with this Guaranty and agrees that venue for any such action shall be in Jefferson County, Alabama."
Keelean, 544 So.2d at 155. Sam Singer, Jr., makes much of this provision and this Court's comment upon it in Keelean: "[I]t is clear that the signing of the contracts of guaranty for this loan gave appellants/guarantors the requisite `fair warning' *1182 required by Burger King Co. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)...." 544 So.2d at 157.
The Keelean Court questioned the propriety of holding the guarantors liable:
"But, can those who guaranteed the loan and received no direct benefits from the loan made by Central to Holdco conceivably have foreseen being haled into an Alabama court on this debt? Or, does the mere signing of a guaranty, out of state, for performance in state, present the sufficient contact with the State of Alabama necessary for in personam jurisdiction?"
544 So.2d at 157. The Court then discussed Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala.1983), in which this Court stated:
"[T]he trial court could have found that the guaranty signed by each appellant was a significant aspect of the negotiations which occurred in Alabama and that it was foreseeable that appellants' transaction would have consequences in this state."
431 So.2d at 145. In Alabama Waterproofing, the negotiations as to the underlying transaction took place in Alabama, but the nonresident defendants signed the guaranty outside Alabama. Nevertheless, it was the foreseeability of being subject to an action in Alabama that determined the outcome in that case. This Court stated that because the consequences of signing the guaranty were foreseeable, sufficient contacts existed with this State to give the Alabama courts in personam jurisdiction over the nonresident defendants.
The Keelean Court appeared to base its decision mainly on the rationale of Alabama Waterproofing, and summarized that part of that decision that explained foreseeability in the case of a loan guaranty:
"It appears from the record that all guarantors were aware that they were guaranteeing payment of the debts and liabilities of a Florida corporation that was borrowing $4,000,000 from an Alabama corporation. It is quite foreseeable that upon default of that loan, they would be held accountable on their contracts of guaranty in the State of Alabama."
544 So.2d at 157. The Keelean Court then commented on the forum-selection clause's giving Holdco "fair warning" of Alabama jurisdiction:
"Furthermore, it is clear that the signing of the contracts of guaranty for this loan gave appellants/guarantors the requisite `fair warning' required by Burger King Co. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)...."
544 So.2d at 157. Therefore, the fact that the contract in Keelean contained a forumselection clause stating that a transaction would be governed by Alabama law was not controlling.
In Millette v. O'Neal Steel, Inc., 613 So.2d 1225 (Ala.1992), this Court stated:
"Without duplicating here our opinion in Keelean, we hold, applying the `effects test' mandated by Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); Alabama Waterproofing; and Duke v. Young, [496 So.2d 37 (Ala. 1986)], that the Millettes should have foreseen the effects of their guaranty in the State of Alabama in the event of a default by Fabricators[, Inc., a Mississippi Corporation owned by the Millettes]. Moreover, the signing of the guaranty and the negotiation of its modifications in Alabama gave the Millettes the fair notice required by Burger King Co. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)."
In 1980, the Millettes, residents of Mississippi, executed a credit agreement for the purchase of steel products from the plaintiff, *1183 O'Neal Steel. O'Neal required the Millettes to personally guarantee the debts of Fabricators, Inc., and even required that they travel to Birmingham in 1982 to execute a modification of the credit agreement. This Court determined that the Millettes had sufficient contact with Alabama for the Alabama court to exercise personal jurisdiction over them. The difference between Singer and the Millettes is the fact that the Millettes traveled to Alabama to renegotiate their agreement.
In Ex parte AmSouth Bank, N.A., 675 So.2d 1305 (Ala.1996), this Court held that the Texas defendant had sufficient contacts with Alabama to subject him to personal jurisdiction. In that case, Lindsey, a Texas resident, had executed a promissory note in favor of AmSouth so that he could enter into a partnership to build apartments in Tennessee. He executed the note in Texas, and the note stated that it should "be governed by and construed in accordance with the laws of the State of Alabama." 675 So.2d at 1306. This Court discussed Keelean, supra, and Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals, 622 So.2d 910 (Ala.1993),[2] and concluded that Lindsey had submitted to Alabama jurisdiction (1) because the transaction, although it involved mailed payments, was not a one-time transaction, but required Lindsey to make payments semiannually for eight years; (2) because Lindsey was the original obligor on the note, not a mere guarantor, as was the case in Keelean; and (3) because the note gave notice that Alabama law would govern it.
The defendants make much of the fact that the agreements in Keelean, supra, and Ex parte AmSouth Bank, supra, contained forum-selection clauses indicating that Alabama law would govern. We agree that in each of those cases this Court referred to that fact in concluding that sufficient contacts existed to assert in personam jurisdiction over the out-of-state defendant. However, it was not the sole factor. Considering the language of Keelean, and Ex parte AmSouth Bank, it is questionable whether it was even a primary factor. The lack of a forum-selection clause in the Singer-ADC agreement does not answer the jurisdiction question.
This Court, in Ex parte AmSouth Bank, supra, seemed to focus upon the fact that the guarantors in Keelean knew that the other party was an Alabama resident:
"At the outset of its analysis, the Court summarily stated: `It is easily conceivable that the primary obligor (Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources.'"
Ex parte AmSouth Bank, 675 So.2d at 1307. In that case, the Court, referring to the Keelean Court, further stated:
"`[C]learly,' the Court stated, `the ... guarantors should have foreseen the effects of their contracts of guaranty in... Alabama in the event of a default on the promissory note. A clear and firm connection exists between the execution of the promissory note, the subsequent default, the contracts of guaranty, and this litigation.' Id. Consequently, the Court held `that the signing of the guarantees was sufficient to create the ... *1184 contact required by the 14th Amendment to the U.S. Constitution ... so that the Alabama court [had] in personam jurisdiction.'"
675 So.2d at 1307. (Emphasis added.) Also, the Court in Ex parte AmSouth Bank determined that it was significant that the nonresident was the "primary obligor," and not just a guarantor.
There are several factors that make this case somewhat difficult to analyze. One, Singer Hardware was engaged in an ongoing business transaction with ADC for three years, as were the parties in Ex parte AmSouth Bank. Two, Sam Singer, Jr., never came to Alabama as the Millette defendants did. Three, Sam Singer, Jr., owns Singer Hardware and guarantees its debts, like the nonresident defendant obligor in Ex parte AmSouth Bank. Four, the guaranty agreement signed by Sam Singer, Jr., did not contain a forum-selection clause, or any other clause, stating that Alabama law was controlling as did the credit agreement in Keelean. The parties argue over whether Sam Singer, Jr., initiated the telephone call that began this transaction, but in our opinion that fact is not controlling.
What appears to be determinative is the fact that Singer Hardware was involved in an ongoing business transaction with ADC and that Sam Singer, Jr., and Singer Hardware, as were the nonresident defendants in Ex parte AmSouth Bank, were "aware that they were guaranteeing payment" to an out-of-state corporation, specifically an Alabama one. Sam Singer, Jr., was not a mere incidental guarantor of the debts of some third party. Sam Singer, Jr., is the president of Singer Hardware Co., Inc., a company engaged in an ongoing business transaction with an Alabama corporation.
Singer Hardware knew that ADC was an Alabama corporation; it engaged in an ongoing business relationship with ADC; and it could have foreseen that on default of such debt ADC would file an action in an Alabama court. The ongoing business relationship between ADC and Singer Hardware and the close relationship between Singer Hardware and Sam Singer, Jr., distinguish this case from a guaranty case involving a one-time transaction between an out-of-state entity and an Alabama party. Therefore, Sam Singer, Jr., and Singer Hardware's contacts with the State of Alabama satisfy the minimum contacts requirement of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Sam Singer, Jr., and Singer Hardware's knowledge that ADC is an Alabama corporation and that any default in their payment to ADC would create hardship for ADC and the potential for their being haled into court in Alabama satisfies the other prong of the two-fold analysis as to the existence of in personam jurisdiction.
We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, BROWN, and STUART, JJ., concur.
HARWOOD, J., concurs specially.
HARWOOD, Justice (concurring specially).
I agree that Singer Hardware Co., Inc., a Georgia corporation, was legally amenable to in personam jurisdiction in the Circuit Court of Covington County, Alabama, because of its ongoing purchases from, and other transactions with, Andalusia Distributing Co., from 1997 until 2000. As to *1185 Sam Singer, Jr., the individual guarantor of the indebtedness allegedly owed by Singer Hardware Co. to Andalusia Distributing Co., I agree that Keelean v. Central Bank of the South, 544 So.2d 153 (Ala. 1989), provides the rationale for exercising in personam jurisdiction over him. Although, as noted by the main opinion, Keelean was overruled on other grounds by Professional Insurance Corp. v. Sutherland, 700 So.2d 347 (Ala.1997), that overruling was with respect to a point totally separate and unrelated to the rationale of Keelean that is pertinent to this case. Specifically, in Sutherland this Court determined that "outbound" forum-selection clauses were not void per se as against the public policy in Alabama. 700 So.2d at 350. The Court noted that it previously had held that outbound forum-selection clauses were invalid and unenforceable as contrary to public policy, in a line of cases that included Keelean. The opinion in Sutherland does not overrule Keelean by name but rather simply includes it as one of the five cases composing the earlier line of authority that held outbound forum-selection clauses void per se as against public policy. Clearly, however, that aspect of Keelean and the other cases was overruled by the language of Sutherland, to the effect that outbound forum-selection clauses would "no longer" be considered void per se as against public policy. The rationale of Keelean concerning the amenability of an out-of-state guarantor to in personam jurisdiction in an Alabama court, was unaffected by Sutherland and is clearly pertinent to this case:
"Appellants/guarantors argue first that although the Central Bank loan to Holdco and Holdco's subsequent default on that loan had a substantial impact on the economy of the State of Alabama, their mere signing of guarantees for the payment of that loan did not make their being haled into an Alabama court fore-seeable. They contend that their relationship to Holdco as guarantors of the loan could not satisfy the requirement of contact with the forum. They buttress their argument with the rule stated in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), in which the Supreme Court stated:
"`The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95.'
"357 U.S. at 253, 78 S.Ct. at 1239-40, 2 L.Ed.2d at 1298. It is easily conceivable that the primary obligor (Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources. But, can those who guaranteed the loan and received no direct benefits from the loan made by Central to Holdco conceivably have foreseen being haled into an Alabama court on this debt? Or, does the mere signing of a guaranty, out of state, for performance in state, present the sufficient contact with the State of Alabama necessary for in personam jurisdiction? In Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala.1983), we upheld the trial court's holding that due process requirements were met by a guaranty signed by nonresident spouses of buyers, even though the guaranty was signed in Mississippi and the spouses *1186 were and had been at all times during the negotiations residents of the State of Mississippi. We noted that the transactions would have consequences in this State and that those consequences would make it foreseeable that the spouses would be sued in this State. 431 So.2d at 144-46. We are of the opinion that the rationale of Alabama Waterproofing is applicable to this case. In determining whether the nonresident guarantors possessed sufficient contact with the State of Alabama for a trial court to obtain in personam jurisdiction, it is necessary for us to examine all the relevant facts of the case, Alabama Waterproofing, supra. It appears from the record that all guarantors were aware that they were guaranteeing payment of the debts and liabilities of a Florida corporation that was borrowing $4,000,000 from an Alabama corporation. It is quite foreseeable that upon the default of that loan, they would be held accountable on their contracts of guaranty in the State of Alabama. Applying the `effects test' mandated by Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala.1983); Duke v. Young, 496 So.2d 37 (Ala.1986), we determine that clearly the appellants/guarantors should have foreseen the effects of their contracts of guaranty in the State of Alabama in the event of a default on the promissory note. A clear and firm connection exists between the execution of the promissory note, the subsequent default, the contracts of guaranty, and this litigation. Furthermore, it is clear that the signing of the contracts of guaranty for this loan gave appellants/guarantors the requisite `fair warning' required by Burger King Co. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), which states:
"`By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," Shaffer v. Heitner, 433 U.S. 186, 218, 53 L.Ed.2d 683, 97 S.Ct. 2569 [2587] (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L.Ed.2d 490, 100 S.Ct. 559 [567] (1980).
"`Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 79 L.Ed.2d 790, 104 S.Ct. 1473 [1478] (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 80 L.Ed.2d 404, 104 S.Ct. 1868 [1872].'
"471 U.S. at 472, 105 S.Ct. at 2182.
"We, therefore, hold that the signing of the guarantees was sufficient to create the sufficient contact required by the 14th Amendment to the U.S. Constitution, see Rule 4.2(a)(2)(I), so that the Alabama court has in personam jurisdiction."
544 So.2d at 157-58 (emphasis added).
NOTES
[1] A nonregistered foreign corporation cannot file an action to enforce a contract in an Alabama court. § 10-2B-15.02, Ala.Code 1975. Georgia apparently is not quite as severe in its treatment of foreign corporations. Ga.Code Ann. §§ 14-2-15-2, 14-2-122 (1981).
[2] In Steel Processors this Court decided that in personam jurisdiction over the out-of-state defendant did not exist because a "`mere one-time purchaser of goods from a seller in a forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state.'" 622 So.2d at 913, quoting Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1059 (11th Cir.1986), and citing other federal cases. This Court applied that standard even though the out-of-state purchaser in Steel Processors had mailed payments to the Alabama seller.