[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 412 
Corporate Waste Alternatives, Inc. ("CWA"), an Alabama corporation, appeals from the trial court's order dismissing its action against McLane Cumberland, Inc. ("Cumberland"), a Texas corporation, for lack of personal jurisdiction. CWA argues that Cumberland had sufficient contacts with the State of Alabama to subject it to suit in this State. We reverse and remand.
 I.
CWA, an Alabama corporation headquartered in Fairhope, Alabama, contracts with other businesses to help those businesses reduce their waste-management expenses. Cumberland is a division of McLane Midwest, Inc., a Texas corporation. McLane's principal place of business is in Illinois; Cumberland's principal place of business is in Nicholasville, Kentucky, where it operates a grocery distribution center that services customers in Kentucky, Michigan, Ohio, Pennsylvania, Indiana, and Tennessee.
Sometime prior to September 10, 1999, CWA's president, Kahley Malloy, contacted Cumberland's corporate officers in Kentucky to see if Cumberland would be interested in using CWA's services. CWA and Cumberland reached an agreement and, on September 10, 1999, Gary Ratzliff, Cumberland's vice president of distribution, signed a contract pursuant to which CWA agreed to help reduce the expenses for waste management at Cumberland's distribution center in Kentucky. In return, Cumberland agreed to pay CWA 50% of the savings it realized as a result of CWA's services. The initial term of the contract was 60 months, but Cumberland had the right to terminate the contract upon giving CWA 60 days' written notice. The contract stipulated that in the event of such a termination Cumberland would continue to pay fees for services rendered by CWA before the date of the termination for up to an additional 60 months. After signing the contract in Kentucky, Cumberland faxed it to Alabama, where Malloy signed it on behalf of CWA. The contract contained a choice-of-law provision stating that the contract was governed by Alabama law.
Thereafter, CWA engaged in the work of reducing Cumberland's expenses associated with recycling, transporting, and disposing of waste at Cumberland's distribution center in Kentucky. Although CWA did much of the work on-site in Kentucky, Cumberland officials also made multiple telephone calls to CWA in Alabama to discuss the work. As a result of CWA's efforts, Cumberland realized savings in its waste-management expenses and, pursuant to the contract, transmitted payments to CWA in Alabama.
On March 6, 2001, Cumberland terminated its contract with CWA and, in its termination letter, stated its position that it had no further obligation to pay fees to CWA after that date. CWA responded that, under the contract, Cumberland was obligated to continue paying CWA for savings it realized in its waste-management expenses as a result of work completed by CWA before the termination date. Cumberland *Page 413 
refused to make any further payments after the termination date, and CWA sued Cumberland in the Baldwin Circuit Court, alleging breach of contract. Cumberland moved the trial court, pursuant to Rule 12(b)(2), Ala. R. Civ. P., to dismiss CWA's action for lack of personal jurisdiction, and, after a hearing, the trial court granted the motion. CWA appeals.
 II.
We discussed the standard of review applicable to a ruling on a motion to dismiss for lack of personal jurisdiction in WengerTree Service v. Royal Truck Equipment, Inc., 853 So.2d 888,894 (Ala. 2002):
 "`In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the . . . court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)). "For purposes of this appeal [on the issue of in personam jurisdiction] the facts as alleged by the . . . plaintiff will be considered in a light most favorable to him [or her]." Duke v. Young, 496 So.2d 37, 38 (Ala. 1986).'
 "Ex parte McInnis, 820 So.2d 795, 798 (Ala. 2001). `An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.' Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala. 2002)."
 III.
The requirements for personal jurisdiction in Alabama are set out in Rule 4.2(a)(2), Ala. R. Civ. P., which provides, in pertinent part:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
". . . .
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of this action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
In effect, "Rule 4.2 extends the personal jurisdiction of Alabama courts to the limits of due process under the federal constitution and the Alabama constitution." Sieber v. Campbell,810 So.2d 641, 644 (Ala. 2001) (citations omitted).
"A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident." Sieber, 810 So.2d at 644. "The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant "`should reasonably anticipate being haled into court'" in the forum state." Elliott v. Van Kleef,830 So.2d 726, 730 (Ala. 2002) (quoting Burger King Corp. v.Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 *Page 414 
(1985), quoting in turn World-Wide Volkswagen Corp. v. Woodson,444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Moreover, the nexus between the defendant and the forum state must arise out of "`an action of the defendant purposefully directed toward the forum State.'" Elliott, 830 So.2d at 731 (quoting Asahi Metal Indus. Co. v. Superior Court ofCalifornia, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92
(1987) (emphasis omitted)). This Court has succinctly summed up these requirements, stating:
 "A twofold analysis is used in this state in determining whether personal jurisdiction exists over a nonresident defendant:
 "1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
 "2) the determination of the degree of contact that the nonresident defendant has with this state."
Keelean v. Central Bank of the South, 544 So.2d 153, 156-57
(Ala. 1989), overruled on other grounds, Professional Ins. Corp.v. Sutherland, 700 So.2d 347 (Ala. 1997).
In the present case, Cumberland should have foreseen, when it entered into the contract with CWA, that it could be haled into court in Alabama. In Andalusia Distributing Co. v. SingerHardware Co., 822 So.2d 1180 (Ala. 2001), an Alabama corporation, Andalusia Distributing Company ("ADC") had sued a Georgia corporation, Singer Hardware Co., and Sam Singer, Jr., for failing to pay for goods delivered to Singer Hardware on an open account. The defendants argued that they had insufficient contacts with Alabama to supply an Alabama court with jurisdiction over them because no employee of Singer Hardware had ever conducted any business in Alabama and because the relationship between ADC and Singer Hardware had been initiated by a representative of ADC who solicited Singer Hardware's business in Georgia. The trial court dismissed the action; however, on appeal, this Court reversed the trial court's dismissal and remanded the case, stating:
 "[The defendants'] knowledge that ADC is an Alabama corporation and that any default in their payment to ADC would create hardship for ADC and the potential for their being haled into court in Alabama satisfies the [foreseeability] prong of the two-fold analysis as to the existence of in personam jurisdiction."
822 So.2d at 1184. Similarly, Cumberland knew that CWA was an Alabama corporation and it knew that any failure to pay CWA the moneys it was owed under the contract would create a hardship for CWA. Moreover, the provision in the contract stating that the contract would be governed by Alabama law should have further alerted Cumberland that it might "reasonably anticipate being haled into court in [Alabama]." Elliott, 830 So.2d at 730.
The second prong of the test concerns the degree of contact the nonresident defendant had with the forum state. Depending on that degree of contact, a defendant may be subject to general jurisdiction or specific jurisdiction.
 "General jurisdiction applies where a defendant's activities in the forum state are `substantial' or `continuous and systematic,' regardless of whether those activities gave rise to the lawsuit. A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit."
Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala. 1998) (citingHelicopteros Nacionales de Colombia, S.A. v. Hall,466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In the present case, there is no evidence indicating that Cumberland has had any contacts with Alabama outside its relationship with CWA. However, CWA argues that *Page 415 
those contacts are sufficient to supply an Alabama court with specific jurisdiction over Cumberland.
The extent of Cumberland's contacts with Alabama is undisputed. On September 10, 1999, Cumberland faxed the signed contract to CWA in Alabama, and from that date until Cumberland terminated the contract on March 6, 2001, Cumberland made multiple telephone calls and mailed multiple payments to CWA in Alabama. Therefore, the question before this Court is whether those actions constitute sufficient minimum contacts to supply an Alabama court with specific jurisdiction over Cumberland. We conclude that they do.
In Ex parte AmSouth Bank, N.A., 675 So.2d 1305 (Ala. 1996), AmSouth, an Alabama bank, sued a nonresident borrower to recover on a promissory note. The note had been executed in Texas; however, the note required the borrower to make semiannual payments to AmSouth at a location in Alabama.[1] The borrower defaulted, and AmSouth sued him in an Alabama court. The borrower moved to dismiss the suit for lack of personal jurisdiction; the trial court denied his motion and subsequently entered a summary judgment for AmSouth. The borrower appealed, and the Court of Civil Appeals reversed the judgment of the trial court, holding that the borrower's contacts with Alabama were insufficient to support a finding of personal jurisdiction.Lindsey v. AmSouth Bank, N.A., 675 So.2d 1303 (Ala.Civ.App. 1994). The Court of Civil Appeals based its conclusion on SteelProcessors, Inc. v. Sue's Pumps, Inc., 622 So.2d 910 (Ala. 1993), which it cited for the proposition that "merely making payments to an address in the forum state is not a sufficient contact to establish personal jurisdiction." Lindsey, 675 So.2d at 1305. In reversing the judgment of the Court of Civil Appeals, this Court stated:
 "To be sure, this case, like Steel Processors [Inc. v. Sue's Pumps, Inc., 622 So.2d 910 (Ala. 1993)], involved the mailing of payments to Alabama, but that is where the analogy ends. Unlike the relationship dealt with in that case, a one-time contract for the purchase of goods, the relationship created by the contract in this case extends for eight years. Steel Processors expressly acknowledges that a contractual relationship will justify the exercise of personal jurisdiction where that relationship has a `"substantial connection"' to the forum state. 622 So.2d at 913.
AmSouth Bank, 675 So.2d at 1308.
Like the promissory note in AmSouth Bank, the contract between CWA and Cumberland created an ongoing relationship between the parties; it was not "a one-time contract for the purchase of goods." 675 So.2d at 1308. Instead, the term of the contract was 60 months. Although Cumberland had the right to terminate the contract by giving CWA 60 days' notice, the contract provided that, in the event of such early termination, Cumberland would continue to pay fees for up to 60 additional months for services rendered by CWA before the termination date. Therefore, under the contract, the relationship between the parties could extend for as much as 10 years. Although Cumberland purported to terminate the contract after only 18 months, the telephone calls and payments it made to CWA in Alabama during that 18-month period constitute contacts sufficient to subject Cumberland to suit in this state.[2] See Andalusia *Page 416 Distrib. Co., 822 So.2d at 1184 ("What appears to be determinative is the fact that [the defendant] was involved in an ongoing business transaction with [the plaintiff]. . . .").
 IV.
Because Cumberland was involved in an ongoing business relationship with CWA, an Alabama corporation, and because of the activities undertaken by Cumberland as part of that relationship — including telephoning CWA in Alabama and mailing payments to CWA in Alabama — we conclude that "it is fair and reasonable to require [Cumberland] to come to this state to defend an action." Rule 4.2(a)(2), Ala. R. Civ. P. Therefore, we reverse the order of the trial court granting Cumberland's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Ala. R. Civ. P., and remand this case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
WOODALL and STUART, JJ., dissent.
[1] Like the contract in the present case, the note in AmSouthBank also had a provision stating that it would be "governed by and construed in accordance with the laws of the State of Alabama." 675 So.2d at 1306.
[2] Cumberland emphasizes that it was CWA that initiated the relationship between the parties by traveling to Kentucky to solicit Cumberland's business. However, while it is true that it is "[o]f particular relevance . . . whether the plaintiffinitiated the sale or contact," Ex parte Troncalli ChryslerPlymouth Dodge, Inc., 876 So.2d 459, 465 (Ala. 2003), we stated in Andalusia Distributing Co. that "that fact is not controlling." 822 So.2d at 1184.