STUART, Justice.
No. 1 Steel Products, Inc., a Massachusetts corporation, petitions this Court for a *806 writ of mandamus directing the St. Clair Circuit Court to dismiss the action filed against it by Garrison Steel Fabricators, Inc., an Alabama corporation, on the basis that the St. Clair Circuit Court lacked personal jurisdiction over it. We grant the petition and issue the writ.
I.
In 2007, No. 1 Steel was engaged as a subcontractor on a construction project at a health and rehabilitation center in Cen-terville, Massachusetts, known as the Cape Regency project. While working on the Cape Regency project, No. 1 Steel determined that it needed to hire out some of the steel fabrication for which it was responsible. The president of No. 1 Steel, Arthur Pimental, stated in an affidavit that No. 1 Steel accordingly took the following action:
“During the project, we were looking for more structural steel fabricators, and it is my recollection that we went through a list of fabricators posted on a website called the Blue Book that is either bluebook.com or thebluebook.com. We sent emails to various companies through the Blue Book website regarding the project, and if a company was interested, it would contact our office. After receiving contact from a company, I would email the company our website, to view drawings on our website, which is www.nolsteel.com, with a password. If the company was interested in submitting a proposal, the company would forward one to our offices in Massachusetts. Our file reflects Garrison Steel Fabricators, Inc., sent a proposal to our offices in Massachusetts, which we reviewed, and which we accepted in Massachusetts by forwarding a purchase order to Garrison Steel Fabricators, Inc. Our acceptance of their proposal was made in Massachusetts.”
The purchase order was sent on October 24, 2007, and according to its terms No. 1 Steel was to pay Garrison Steel $124,200 for the completed product and fabrication services. Garrison Steel thereafter commenced fabrication of the ordered product at its facility in Pell City. The companies apparently communicated via telephone, fax, and e-mail during the negotiation and fabrication process; however, representatives from No. 1 Steel never visited Garrison Steel’s facility in Alabama. When the fabrication was complete, Garrison Steel sent the product to No. 1 Steel at its work site in Massachusetts. Although the materials before this Court do not fully explain why, it is apparent that No. 1 Steel was in some way dissatisfied with the delivered product, and No. 1 Steel refused to pay Garrison Steel anything beyond the $64,200 it had previously paid.
In an attempt to collect the remaining $60,000 it claimed No. 1 Steel owed it, Garrison Steel sent No. 1 Steel notice that it intended to file a mechanic’s lien unless it was paid the balance of the agreed-upon price. Attached to this notice was a draft of the lien to be filed if no settlement was reached. Upon receiving the notice, No. 1 Steel filed in a Massachusetts court a motion to discharge and release the not yet filed lien, arguing that Garrison Steel was not registered to do business in Massachusetts and that no written contract of the parties’ agreement existed; the Massachusetts court granted the motion without stating a rationale.
On June 17, 2009, Garrison Steel sued No. 1 Steel in the St. Clair Circuit Court, asserting claims of open account, implied contract, and labor and work performed and seeking damages in the amount of $60,000. On July 16, 2009, No. 1 Steel moved the trial court to dismiss the action or, in the alternative, to enter a summary judgment in its favor, arguing, among oth *807 er things, that the trial court lacked personal jurisdiction over it because No. 1 Steel did not do business in Alabama and lacked the required contacts with Alabama to subject it to personal jurisdiction here. Attached to this motion was the affidavit, quoted earlier, of No. 1 Steel’s president, Pimental. Garrison Steel filed a response in opposition to No. 1 Steel’s motion, arguing that No. 1 Steel had had sufficient contact with Alabama for an Alabama court to exercise jurisdiction over it. Garrison Steel supported its response with copies of the plans and requirements it alleged No. 1 Steel had sent it and copies of e-mail correspondence between the two companies concerning the project. Garrison Steel also submitted an affidavit from its controller, Keith Cornelius, in which he swore that Garrison Steel’s relationship with No. 1 Steel had begun sometime in the latter part of 2007 when “sales representatives with my company were contacted by representatives of [No. 1 Steel] regarding my company constructing various structural steel items for delivery to a project being supplied by [No. 1 Steel].”
No. 1 Steel then filed a reply to Garrison Steel’s response, disputing the assertion in Cornelius’s affidavit that No. 1 Steel had initiated contact with Garrison Steel in Alabama. Accompanying this reply was an affidavit from David Malone, a former sales representative at Garrison Steel, who stated that, sometime in 2007, he had learned about No. 1 Steel’s need for steel-fabrication services in association with the Cape Regency project from his previous employer, Smith Ironworks, a Georgia company, which was itself too busy to bid on the project. Malone further stated that, upon learning of the opportunity, he contacted No. 1 Steel and was told how to access specific information about the project on No. 1 Steel’s Web site, which he did before preparing the bid that was then submitted and ultimately accepted.
In response to Malone’s affidavit, Garrison Steel filed a response supported by an affidavit from its president, John Garrison, asserting that Malone was a disgruntled former employee and noting that Malone’s affidavit testimony appeared to contradict the affidavit testimony of No. 1 Steel’s president, Pimental, who had previously stated that “[w]e [i.e., No. 1 Steel] sent emails to various companies through the Blue Book website regarding the project.”
On September 9, 2010, the trial court, treating No. 1 Steel’s motion seeking a dismissal of the case on the basis of a lack of personal jurisdiction as a summary-judgment motion, denied the motion. On September 24, 2010, No. 1 Steel petitioned this Court, seeking mandamus review of the trial court’s decision. We subsequently ordered Garrison Steel to file a response to No. 1 Steel’s petition, which it timely submitted, and, on June 28, 2011, we heard oral arguments from the parties concerning the personal-jurisdiction issue.
II.
A petition for a writ of mandamus is the appropriate manner in which to challenge a trial court’s order deciding the question of personal jurisdiction. Ex parte Lowengart, 59 So.3d 673, 677-78 (Ala. 2010). We review such a petition pursuant to the following standard of review:
“ ‘ “The writ of mandamus is a drastic and extraordinary writ, to be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993); see also Ex parte Ziglar, 669 *808 So.2d 133, 134 (Ala.1995).” Ex parte Carter, [807 So.2d 534,] 536 [(Ala. 2001) ].’
“Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001). ‘An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.’ Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002).”
Ex parte Bufkin, 936 So.2d 1042, 1044-45 (Ala.2006).
III.
In Ex parte Excelsior Financial, Inc., 42 So.3d 96 (Ala.2010), we reviewed the due-process concerns that govern a court’s decision whether to exercise personal jurisdiction over an out-of-state party, stating:
“ ‘The extent of an Alabama court’s personal jurisdiction over a person or corporation is governed by Rule 4.2, Ala. R. Civ. P., Alabama’s “long-arm rule,” bounded by the limits of due process under the federal and state constitutions. Sieber v. Campbell, 810 So.2d 641 (Ala.2001). Rule 4.2(b), as amended in 2004, states:
“ ‘ “(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts .with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States.... ”
“ ‘In accordance with the plain language of Rule 4.2, both before and after the 2004 amendment, Alabama’s long-arm rule consistently has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. Duke v. Young, 496 So.2d 37 (Ala. 1986); DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447 (Ala.1977). As this Court reiterated in Ex parte McInnis, 820 So.2d 795, 802 (Ala. 2001) (quoting Sudduth v. Howard, 646 So.2d 664, 667 (Ala.1994)), and even more recently in Hiller Investments Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala.2006): “Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions.” (Emphasis added.)
“ ‘This Court discussed the extent of the personal jurisdiction of Alabama courts in Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala.2002):
“ ‘ “This Court has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution. See Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145 (Ala.1983), and DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447, 449 (Ala.1977). See also Rule 4.2, Ala. R. Civ. P., Committee Comments on 1977 Complete Revision following Rule 4.4, under the heading ‘ARCP 4.2.’ (‘Subpara-graph (I) was included by the Committee to insure that a basis of jurisdiction was included in Alabama procedure that was coextensive with the scope of the federal due process clause....’).
“ ‘ “The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient ‘minimum contacts’ with the forum *809 state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant’s contacts is whether the contacts are such that the nonresident defendant ‘ “should reasonably anticipate being haled into court” ’ in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).” ’
“Ex parte DBI, Inc., 23 So.3d 635, 643-44 (Ala.2009) (footnote omitted).
“ ‘Furthermore, this Court has explained:
The sufficiency of a party’s contacts are assessed as follows:
“ ‘ “ ‘Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant’s contacts with the forum state that are unrelated to the cause of action and that are both “continuous and systematic.” Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant’s contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.’
“ ‘ “Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result) ....
“ ‘ “In the case of either general in personam jurisdiction or specific in personam jurisdiction, ‘[t]he “substantial connection” between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.’ Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).”
“‘Elliott [v. Van Kleef], 830 So.2d [726,] 730-31 [ (Ala.2002) ] (emphasis added).’
“Sverdrup Tech., Inc. v. Robinson, 36 So.3d 34, 42-13 (Ala.2009).”
42 So.3d at 100-02 (some emphasis omitted). There is no allegation that in per-sonam jurisdiction based on general contacts would be appropriate in this case; we must accordingly determine whether No. 1 Steel’s contacts with Alabama in connection with its transaction with Garrison Steel, i.e., the specific contacts, were sufficient such that No. 1 Steel should have anticipated being haled into court here. For the reasons that follow, we hold that they were not.
No. 1 Steel’s contacts with Alabama appear to consist entirely of telephone, fax, and e-mail correspondence between it and Garrison Steel concerning the negotiation of an agreement between the parties and the subsequent fabrication and delivery of the ordered pieces. The parties hotly dispute which party initiated contact, because this Court has stated that that fact is “of particular relevance” in determining *810 whether an out-of-state defendant has purposefully availed itself of the privilege of conducting business activities within Alabama such that it reasonably should anticipate being haled into court in this State. Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459, 465 (Ala.2003). The evidence on that disputed point is ultimately unclear. Even if we were to conclude that the initial contact was made by No. 1 Steel, however, that fact is not controlling, Vista Land & Equip., L.L.C. v. Computer Programs & Sys., Inc., 953 So.2d 1170, 1176 n. 3 (Ala.2006), and Garrison Steel concedes that “it really doesn’t matter.” (Garrison Steel’s brief, p. 4.)
We have also held that the mere fact that an out-of-state party initiates telephone calls to Alabama or otherwise makes use of interstate forms of communication is not controlling, stating “ ‘[t]he use of interstate facilities (telephone, the mail) ... [is a] secondary or ancillary factor[ ] and cannot alone provide the “minimum contacts” required by due process.’ ” Steel Processors, Inc. v. Sue’s Pumps, Inc. Rentals, 622 So.2d 910, 913 (Ala.1993) (quoting Scullin Steel Co. v. National Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir.1982)). What is controlling is the nature and extent of the relationship between the out-of-state defendant and the Alabama resident with which it engaged. In Vista Land & Equipment, we considered a dispute between an out-of-state company, Vista Land and Equipment (“VLE”), and Computer Programs & Systems, Inc. (“CPSI”), a Mobile company from which VLE had purchased equipment, software, and maintenance services. In concluding that VLE was subject to the jurisdiction of the Alabama courts, this Court focused on the fact that VLE had entered into an ongoing business relationship with CPSI rather than being merely a one-time purchaser of goods, stating: “ ‘What appears to be determinative is the fact that [the nonresident defendant] was involved in an ongoing business transaction with [the plaintiff].”’ 953 So.2d at 1175 (quoting Andalusia Distrib. Co. v. Singer Hardware Co., 822 So.2d 1180, 1184 (Ala.2001)). We further explained:
“As with the revolving-credit account in Andalusia Distributing Co., the promissory note in Ex parte AmSouth Bank, N.A., 675 So.2d 1305 (Ala.1996), and the services contract in Corporate Waste Alternatives, Inc. v. McLane Cumberland, Inc., 896 So.2d 410 (Ala. 2004), all cases in which this Court authorized an Alabama court to exercise jurisdiction over a nonresident defendant, the contract between VLE and CPSI created an ongoing relationship between the two parties. It was not a one-time contract for the purchase of goods as was the contract in Steel Processors, in which this Court held that the Alabama court had no jurisdiction over the nonresident defendant. Rather, the contract between VLE and CPSI was ongoing; it was to renew automatically each year unless one of the parties gave advance notice under the terms of the contract. This contractual relationship, when combined with the additional contacts incidental to that relationship, should have put VLE on notice that it might be haled into an Alabama court in connection with that contract.
“This Court’s decision in Corporate Waste Alternatives is particularly instructive. In that case, Corporate Waste Alternatives, Inc. (‘CWA’), an Alabama corporation, entered into a contract with McLane Cumberland, Inc. (‘Cumberland’), a Kentucky-based company, to help Cumberland reduce its waste-management expenses at a Kentucky distribution center. In return, Cumberland agreed that CWA would be entitled to 50% of its resultant savings.
*811 The contract had an initial 5-year term; however, under the terms of the contract the relationship could be extended to 10 years under certain circumstances. CWA performed most of the work under the contract on-site in Kentucky, but Cumberland officials made multiple telephone calls to CWA in Alabama to discuss the work. They also sent multiple payments to CWA in Alabama.
“After approximately 18 months, Cumberland terminated the contract and refused to make further payments to CWA. CWA then sued Cumberland in the Baldwin Circuit Court, alleging breach of contract, and the personal-jurisdiction issue ultimately arrived in this Court. After reviewing Cumberland’s contacts with Alabama, this Court ultimately concluded that Cumberland could be haled into an Alabama court, holding:
“ ‘Because Cumberland was involved in an ongoing business relationship with CWA, an Alabama corporation, and because of the activities undertaken by Cumberland as part of that relationship — including telephoning CWA in Alabama and mailing payments to CWA in Alabama — we conclude that “it is fair and reasonable to require [Cumberland] to come to this state to defend an action.” Rule 4.2(a)(2), Ala. R. Civ. P.’
“896 So.2d at 416. The instant case is almost identical; VLE and CPSI were involved in a similar ongoing business relationship that was supported by multiple telephone calls from VLE to CPSI in Alabama, as well as by multiple payments mailed to CPSI in Alabama. The facts that VLE representatives traveled to Alabama to learn about CPSI’s products and that it was VLE that reinitiated contact with CPSI in Alabama before entering into the contract further bolster a finding that VLE should be subject to the jurisdiction of Alabama courts.
“VLE attempts to distinguish Corporate Waste Alternatives in two ways. First, it argues that the Supreme Court of the United States in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), specifically refuted the proposition that a party subjects itself to a foreign court’s jurisdiction simply by entering into a contract with a party within that jurisdiction:
“ ‘At the outset, we note a continued division among lower courts respecting whether and to what extent a contract can constitute a “contact” for purposes of due process analysis. If the question is whether an individual’s contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party’s home forum, we believe the answer clearly is that it cannot.’
“(Footnote omitted.) Neither Corporate Waste Alternatives nor our holding today conflicts in any way with Rudzewicz. This Court has never held that a party may be subject to jurisdiction in the courts of this State simply because that party contracted with an Alabama party. To the contrary, in Steel Processors, we explicitly recognized that a one-time contract for the purchase of goods was an insufficient basis for jurisdiction.
“VLE’s argument fails to recognize that our caselaw does not authorize the exercise of personal jurisdiction over a nonresident defendant solely on the basis of contracts it may have entered into with Alabama parties; rather, such jurisdiction is authorized when there is an ongoing contractual relationship supported by the additional contacts that are incidental to such a relationship. *812 See Andalusia Distrib. Co., 822 So.2d at 1184 (‘What appears to be determinative is the fact that [the nonresident defendant] was involved in an ongoing business transaction with [the plaintiff] ....’); Rudzewicz, 471 U.S. at 475-76, 105 S.Ct. 2174 (‘Thus where the defendant “deliberately” has engaged in significant activities within a State, or has created “continuing obligations” between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there.... ’ (emphasis added; citations omitted)). Even ‘Steel Processors expressly acknowledges that a contractual relationship will justify the exercise of personal jurisdiction where that relationship has a “ ‘substantial connection! ]’ ” to the forum state.’ Ex parte AmSouth Bank, 675 So.2d at 1308.”
953 So.2d at 1175-77 (footnote omitted).
It is undisputed that No. 1 Steel’s relationship with Garrison Steel was limited to a one-time purchase of goods. It is true that No. 1 Steel purchased a customized product as opposed to off-the-shelf goods. This fact alone, however, does not merit a deviation from our established caselaw. We have in previous cases “explicitly recognized that a one-time contract for the purchase of goods is an insufficient basis for jurisdiction,” 953 So.2d at 1177, and we reaffirm that principle today and hold that there was no basis for the trial court to exercise personal jurisdiction over No. 1 Steel. Id.
IV.
The trial court treated No. 1 Steel’s motion to dismiss Garrison Steel’s action against it on the basis of a lack of personal jurisdiction as a motion for a summary judgment and denied it. However, because No. 1 Steel’s contacts with the State of Alabama in connection with its transaction with Garrison Steel did not rise to such a level that No. 1 Steel should have anticipated being haled into court here, that denial was erroneous. Accordingly, No. 1 Steel’s petition for a writ of mandamus is granted, and the trial court is hereby directed to enter an order dismissing the action filed by Garrison Steel against No. 1 Steel because the court lacked personal jurisdiction over No. 1 Steel.
PETITION GRANTED; WRIT ISSUED.
WOODALL, BOLIN, SHAW, MAIN, and WISE, JJ., concur.
’ COBB, C.J., and PARKER and MURDOCK, JJ., dissent.