NABERS, Chief Justice.
Computer Programs & Systems, Inc. (“CPSI”), sued Vista Land and Equipment, L.L.C. (“VLE”), in the Mobile Circuit Court, alleging breach of contract. Following a bench trial, the trial court entered a judgment in favor of CPSI and set damages at $367,562.15. On appeal, VLE argues that the trial court lacked jurisdiction over it because it did not have minimum contacts with Alabama to subject it to suit in this State. VLE further argues that the trial court exceeded its discretion by imposing discovery sanctions against it in the amount of $2,107.20. We affirm the trial court’s judgment.
I.
CPSI, a Delaware corporation with its headquarters and principal place of business in Mobile, Alabama, develops hardware and software products for use in small and mid-sized hospitals. CPSI markets and sells its products, along with accompanying installation services, training, and technical support, to hospitals around the country.
VLE is a Texas limited liability company. Its sole member is Dynacq Healthcare, Inc., a Delaware corporation. VLE is the entity through which Dynacq acquires real property and enters into capital leases and other long-term obligations in Texas, and VLE owns the land and business equipment for hospitals operated by Dynacq in Pasadena, Texas, and Garland, Texas.
*1172 In 2001, VLE was looking to install a computer system in some of its facilities. VLE investigated purchasing a CPSI system and even went so far as to send representatives to Alabama to examine CPSI’s facilities and to review its products. However, VLE ultimately entered into a contract with Healthcare Management Systems, Inc. (“HMS”), a competitor of CPSI’s.
Sometime in 2003, VLE became dissatisfied with the service and performance of the HMS system it had installed. In September 2003, VLE recontacted CPSI to again express interest in purchasing a CPSI system and to request another presentation. After CPSI personnel traveled to Pasadena, Texas, and made their presentation, VLE agreed to purchase a CPSI system for a hospital in Garland, Texas, that Dynacq had recently acquired. On December 26, 2003, VLE entered into a purchase agreement with CPSI to purchase various software licenses, computer hardware, and computer-operating systems. This agreement contained a choice-of-law provision, which stated: “This agreement shall be construed and enforced under the laws of the State of Texas.” VLE simultaneously entered into a support agreement with CPSI in which CPSI agreed to provide system support and hardware maintenance services for a one-year period, to be automatically renewed each year unless terminated in writing by either party at least 30 days before the expiration of the previous term. The two agreements (hereinafter referred to collectively as “the contract”) were valued at approximately $490,000. Upon entering the contract, VLE mailed to CPSI in Alabama a deposit of 10% of that amount.
CPSI subsequently delivered the hardware and software to VLE in Texas and commenced installation and training. Pursuant to the terms of the contract, VLE sent CPSI another payment at this time. The system passed acceptance testing on April 1, 2004, and, although the remaining balance became due at that time, VLE did not immediately pay it.
Over the next several months, VLE and CPSI worked to get the system running to VLE’s full satisfaction. CPSI’s records indicate that VLE telephoned CPSI over 90 times between April 13, 2004, and June 23, 2004, for troubleshooting and other requests to modify, enhance, or otherwise customize the system to VLE’s specific needs.[1] However, VLE ultimately determined that the CPSI system would not work as represented, and it refused to pay the balance due on the contract. On June 23, 2004, CPSI ceased providing support services to VLE because of VLE’s failure to pay the balance owed.
On August 24, 2004, CPSI sued VLE in the United States District Court for the Southern District of Alabama, alleging breach of contract. VLE promptly moved the court to dismiss the action for lack of personal jurisdiction over it, and, after CPSI filed a motion in opposition, the magistrate judge issued a report recommending that VLE’s motion be granted. The complete record of the federal action is not before this Court; however, VLE states that CPSI then notified the federal district court that the statement of jurisdiction in its complaint was wrong and that the federal district court in fact lacked subject-matter jurisdiction over the matter. The court then dismissed the action *1173 without prejudice without entering a judgment on the magistrate’s report.
On March 17, 2005, CPSI sued VLE in the Mobile Circuit Court, alleging breach of contract. On April 27, 2005, VLE moved that court to dismiss the action for lack of personal jurisdiction over it. CPSI opposed VLE’s motion to dismiss. Although no order is in the record, the statements of the parties indicate that the trial court denied VLE’s motion to dismiss on May 20, 2005. VLE filed its answer on June 10, 2005, and the parties thereafter proceeded with the pretrial process.
The pretrial process was beset by delay and dispute. On June 29, 2005, the trial court set the case for a bench trial on September 15, 2005. On August 17, 2005, VLE moved the court to continue the trial, alleging that corporate officers involved in the case were also involved in preparing corporate securities filings that were due during this same time period. The trial court granted the motion and continued the trial until November 17, 2005.
On September 29, 2005, CPSI moved the trial court to compel VLE to answer interrogatories served upon it on July 16, 2005. The trial court granted CPSI’s motion and ordered VLE to respond by November 1, 2005.
On October 21, 2005, CPSI filed another motion to compel after being notified that two of VLE’s corporate representatives, who were scheduled to be deposed on October 25, 2005, in Pasadena, Texas, would be unavailable because an unrelated trial they were involved in had been rescheduled for that date by a Texas state court. CPSI asked the trial court to order the VLE representatives to travel to Mobile for depositions the next week; however, after a hearing, the trial court instead rescheduled the depositions for November 3, 2005, at VLE’s offices in Pasadena.
On November 2, 2005, VLE moved the trial court to continue both the depositions scheduled for the next day and the trial set for November 17, 2005. As grounds for the continuance, VLE alleged that the schedule as set at that time would impose undue hardship upon it because its representatives were busy preparing financial reports that the Securities and Exchange Commission (“SEC”) required be filed by November 14, 2005. The trial court held a hearing on VLE’s motion and, at that hearing, gave VLE the choice of either producing its representatives for the depositions scheduled in Pasadena on November 3, 2005, or, alternatively, producing those representatives for deposition in Mobile on November 15, 2005, and reimbursing CPSI for the nonrefundable travel expenses it had incurred in anticipation of traveling to Pasadena.
VLE elected not to proceed with the November 3 depositions. Accordingly, on November 7, 2005, the trial court entered an order: 1) requiring the VLE representatives to appear for depositions in Mobile on November 15, 2005; 2) ordering VLE to pay CPSI $2,107.20 as reimbursement for the airfare it had purchased for its representatives to travel to Pasadena for the November 3 depositions; and 3) continuing the trial until November 22, 2005.
On November 11, 2005, VLE petitioned this Court for a writ of mandamus ordering the trial court to vacate its November 7 order and to continue both the scheduled depositions and the trial until after December 1, 2005. This petition was still pending on November 15, 2005, the scheduled date for the depositions. At approximately 9:00 a.m. that morning, VLE notified CPSI that its representatives would not *1174 appear for their depositions. CPSI moved for sanctions and was awarded fees and expenses. This Court denied VLE’s petition for the writ of mandamus on November 16, 2005. Ex parte Vista Land & Equip., L.L.C. (No. 1050642).
On November 30, 2005, CPSI was finally able to depose Jean Wincher, whom VLE had designated its corporate representative pursuant to Rule 30(b)(6), Ala. R. Civ. P. A bench trial was held the following week and, on December 7, 2005, the trial court entered a judgment in favor of CPSI and against VLE and awarded CPSI $367,562.15. The trial court also taxed all costs against VLE and awarded CPSI an additional $4,032.70, which includes the $2,107.20 in airfare reimbursement that the trial court had previously ordered VLE to pay. VLE moved to vacate the judgment on the ground that CPSI had failed to prove any factual basis for the exercise of personal jurisdiction over VLE, but its motion was denied. VLE appeals.
II.
VLE first argues that the trial court erred in denying its motion to dismiss for lack of personal jurisdiction. This Court set forth the standard of review applicable to such a claim in Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002): “An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.” Moreover, this Court has also stated that the plaintiff carries the burden of proving the trial court’s personal jurisdiction over the defendant. Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229 (Ala.2004).
Alabama’s “long-arm rule,” Rule 4.2, Ala. R. Civ. P., governs when courts of this State may exercise personal jurisdiction over an out-of-state defendant. It effectively extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and Alabama Constitutions. This Court has consistently interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution.
“A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.” Sieber v. Campbell, 810 So.2d 641, 644 (Ala.2001). Rather, a nonresident defendant need only “have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The minimum-contacts analysis focuses on the defendant’s contacts with the forum state and whether the defendant has “purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citing International Shoe, 326 U.S. at 319, 66 S.Ct. 154). “When a [defendant] ‘purposefully avails itself of the privilege of conducting activities within the forum State,’ ... it has clear notice that it is subject to suit there” and the due-process requirements of the Fourteenth Amendment are fulfilled. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting Hanson, 357 U.S. at 253, 78 S.Ct. 1228). However, even if a court determines that there are minimum contacts so as to permit it to exercise *1175 jurisdiction, it must still consider whether doing so is appropriate. See Elliott, 830 So.2d at 731 (“Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors ... to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with ‘ “traditional notions of fair play and substantial justice.” ’ Brooks v. In-low, 453 So.2d 349, 351 (Ala.1984), quoting International Shoe, 326 U.S. at 316, 66 S.Ct. 154”).
Thus, pursuant to the above guidelines, we first examine VLE’s contacts with the State of Alabama in order to determine whether those contacts are such that VLE could have reasonably anticipated being haled into an Alabama court. There is no evidence indicating that VLE has had any contacts with Alabama outside its relationship with CPSI, and CPSI has not argued that VLE is subject to general jurisdiction in this State; therefore, VLE must have had minimum contacts with Alabama to subject itself to specific, as opposed to general, jurisdiction.[2]
In its reply brief filed with this Court, VLE concedes that it has had the following contacts with Alabama:
“In this case the facts supporting jurisdiction over VLE are these: (1) a VLE representative made a trip to Alabama to visit CPSI before the contract was formed; (2) the contract contained an annually renewable support agreement; (3) VLE made approximately 90 phone calls to CPSI to try to obtain product support; (4) VLE made payments to Alabama; and (5) VLE made separate purchases from CPSI of approximately $6,000 in office supplies.”
VLE then argues that these contacts fail to establish that it ever purposefully availed itself of the privilege of conducting business in Alabama. We disagree.
VLE argues that the telephone calls and payments made to CPSI in Alabama are, by themselves, of marginal relevance at best. See Steel Processors, Inc. v. Sue’s Pumps, Inc., 622 So.2d 910, 913 (Ala.1993) (“ ‘The use of interstate facilities (telephone, the mail) ... [is a] secondary or ancillary factor[] and cannot alone provide the “minimum contacts” required by due process.’ ” (quoting Scullin Steel Co. v. National Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir.1982))). VLE also discounts its purchases of additional supplies from CPSI, arguing that CPSI has admitted that those purchases were unrelated to the contract, so they are accordingly of no importance in establishing specific jurisdiction for CPSI’s breach-of-contract claim. However, even if VLE’s arguments on these points are correct, “[w]hat appears to be determinative is the fact that [the nonresident defendant] was involved in an ongoing business transaction with [the plaintiff].” Andalusia Distrib. Co. v. Singer Hardware Co., 822 So.2d 1180, 1184 (Ala.2001) (emphasis added).
As with the revolving-credit account in Andalusia Distributing Co., the promisso *1176 ry note in Ex parte AmSouth Bank, N.A, 675 So.2d 1305 (Ala.1996), and the services contract in Corporate Waste Alternatives, Inc. v. McLane Cumberland, Inc., 896 So.2d 410 (Ala.2004), all cases in which this Court authorized an Alabama court to exercise jurisdiction over a nonresident defendant, the contract between VLE and CPSI created an ongoing relationship between the two parties. It was not a onetime contract for the purchase of goods as was the contract in Steel Processors, in which this Court held that the Alabama court had no jurisdiction over the nonresident defendant. Rather, the contract between VLE and CPSI was ongoing; it was to renew automatically each year unless one of the parties gave advance notice under the terms of the contract. This contractual relationship, when combined with the additional contacts incidental to that relationship, should have put VLE on notice that it might be haled into an Alabama court in connection with that contract.
This Court’s decision in Corporate Waste Alternatives is particularly instructive. In that case, Corporate Waste Alternatives, Inc. (“CWA”), an Alabama corporation, entered into a contract with McLane Cumberland, Inc. (“Cumberland”), a Kentucky-based company, to help Cumberland reduce its waste-management expenses at a Kentucky distribution center. In return, Cumberland agreed that CWA would be entitled to 50% of its resultant savings. The contract had an initial 5-year term; however, under the terms of the contract the relationship could be extended to 10 years under certain circumstances. CWA performed most of the work under the contract on-site in Kentucky, but Cumberland officials made multiple telephone calls to CWA in Alabama to discuss the work. They also sent multiple payments to CWA in Alabama.
After approximately 18 months, Cumberland terminated the contract and refused to make further payments to CWA. CWA then sued Cumberland in the Baldwin Circuit Court, alleging breach of contract, and the personal-jurisdiction issue ultimately arrived in this Court. After reviewing Cumberland’s contacts with Alabama, this Court ultimately concluded that Cumberland could be haled into an Alabama court, holding:
“Because Cumberland was involved in an ongoing business relationship with CWA, an Alabama corporation, and because of the activities undertaken by Cumberland as part of that relationship — including telephoning CWA in Alabama and mailing payments to CWA in Alabama — we conclude that ‘it is fair and reasonable to require [Cumberland] to come to this state to defend an action.’ Rule 4.2(a)(2), Ala. R. Civ. P.”
896 So.2d at 416. The instant case is almost identical; VLE and CPSI were involved in a similar ongoing business relationship that was supported by multiple telephone calls from VLE to CPSI in Alabama, as well as by multiple payments mailed to CPSI in Alabama. The facts that VLE representatives traveled to Alabama to learn about CPSI’s products and that it was VLE that reinitiated contact with CPSI in Alabama before entering into the contract further bolster a finding that VLE should be subject to the jurisdiction of Alabama courts.[3]
VLE attempts to distinguish Corporate Waste Alternatives in two ways. First, it *1177 argues that the Supreme Court of the United States in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), specifically refuted the proposition that a party subjects itself to a foreign court’s jurisdiction simply by entering into a contract with a party within that jurisdiction:
“At the outset, we note a continued division among lower courts respecting whether and to what extent a contract can constitute a ‘contact’ for purposes of due process analysis. If the question is whether an individual’s contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party’s home forum, we believe the answer clearly is that it cannot.”
(Footnote omitted.) Neither Corporate Waste Alternatives nor our holding today conflicts in any way with Rudzewicz. This Court has never held that a party may be subject to jurisdiction in the courts of this State simply because that party contracted with an Alabama party. To the contrary, in Steel Processors, we explicitly recognized that a one-time contract for the purchase of goods was an insufficient basis for jurisdiction.
VLE’s argument fails to recognize that our caselaw does not authorize the exercise of personal jurisdiction over a nonresident defendant solely on the basis of contracts it may have entered into with Alabama parties; rather, such jurisdiction is authorized when there is an ongoing contractual relationship supported by the additional contacts that are incidental to such a relationship. See Andalusia Dis-tñb. Co., 822 So.2d at 1184 (“What appears to be determinative is the fact that [the nonresident defendant] was involved in an ongoing business transaction with [the plaintiff]_”); Rudzewicz, 471 U.S. at 475-76, 105 S.Ct. 2174 (“Thus where the defendant ‘deliberately’ has engaged in significant activities within a State, or has created ‘continuing obligations’ between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there .... ” (emphasis added; citations omitted) ). Even “Steel Processors expressly acknowledges that a contractual relationship will justify the exercise of personal jurisdiction where that relationship has a ‘ “substantial connection[ ]” ’ to the forum state.” Ex parte AmSouth Bank, 675 So.2d at 1308.
VLE next attempts to distinguish Corporate Waste Alternatives on the basis that the contract in that case contained a choice-of-law provision stating the contract was governed by Alabama law. In this case, the contract contained a choice-of-law provision stating it was governed by Texas law. In Corporate Waste Alternatives, we stated that “the provision in the contract stating that the contract would be governed by Alabama law should have further alerted Cumberland that it might ‘reasonably anticipate being haled into court in [Alabama].”’ 896 So.2d at 414 (quoting Elliott, 830 So.2d at 730). However, it is important to note that this statement was made only after we had already concluded that Cumberland should have foreseen that it might be haled into an Alabama court based on its ongoing contractual relationship with an Alabama business. In Andalusia Distributing Co., this Court *1178 discussed the significance of a choice-of-law provision in the personal-jurisdiction analysis. We stated:
“The defendants make much of the fact that the agreements in Keelean [v. Central Bank of the South, 544 So.2d 153 (Ala.1989) ], and Ex parte AmSouth Bank, [NA., 675 So.2d 1305 (Ala.1996) ], contained forum-selection clauses indicating that Alabama law would govern. We agree that in each of those cases this Court referred to that fact in concluding that sufficient contacts existed to assert in personam jurisdiction over the out-of-state defendant. However, it was not the sole factor. Considering the language of Keelean and Ex parte Am-South Bank, it is questionable whether it was even a primary factor.”
822 So.2d at 1183. See also Rudzewicz, 471 U.S. at 482, 105 S.Ct. 2174 (stating that choice-of-law provisions are relevant, but “such a provision standing alone would be insufficient to confer jurisdiction”).
For all of the above reasons, we conclude that VLE has purposefully established minimum contacts within Alabama sufficient to allow an Alabama court to exercise jurisdiction over it. Nevertheless, we still must consider “whether subjecting [VLE] to Alabama’s jurisdiction would violate traditional notions of ‘fair play and substantial justice.’ ” Leithead v. Banyan Corp., 926 So.2d 1025, 1032 (Ala.2005) (quoting International Shoe, 326 U.S. at 320, 66 S.Ct. 154). In doing so, we may evaluate:
“‘[T]he burden on the defendant,’ ‘the forum State’s interest in adjudicating the dispute,’ ‘the plaintiffs interest in obtaining convenient and effective relief,’ ‘the interstate judicial system’s interest in obtaining the most efficient resolution of controversies,’ and the ‘shared interest of the several States in furthering fundamental substantive social policies.’ ”
Rudzewicz, 471 U.S. at 477, 105 S.Ct. 2174 (quoting World-Wide Volkswagen, 444 U.S. at 292,100 S.Ct. 559).
The only one of these considerations VLE has directly addressed is the burden placed on it by being forced to litigate its dispute with CPSI in Alabama. In its reply brief to this Court, VLE argues that “as demonstrated by the course of this lawsuit, litigation in Alabama is highly inconvenient for VLE.” Litigation is rarely convenient, whatever the forum. However, it is not clear that the inconvenience in this case was caused by the Alabama forum. Twice depositions were scheduled for VLE’s witnesses at their own company offices in Texas, and twice VLE canceled those depositions. It was only then that anybody from VLE was required to travel to Alabama. VLE’s argument on this point is not convincing, and, in any event, it fails to outweigh Alabama’s “interest in adjudicating the dispute” and CPSI’s “interest in obtaining convenient and effective relief.” Traditional notions of fair play and substantial justice are not offended by haling VLE into court in Alabama.
III.
VLE’s second argument is that the trial court exceeded its discretion in imposing discovery sanctions upon VLE for canceling the November 3, 2005, depositions of VLE’s corporate representatives. In Environmental Monitoring & Testing Corp. v. Kidd, 623 So.2d 1031, 1032 (Ala.1993), this Court stated:
“Deeply rooted in the common law is the court’s power to manage its affairs in *1179 order to achieve the orderly and expeditious disposition of cases, including the authority to impose reasonable and appropriate sanctions for failure to comply with discovery and the court orders resulting therefrom. Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala.1989). The appellate court will not disturb the trial court’s choice of discovery sanctions on appeal absent some abuse of discretion. Ragan v. Blazon Flexible Flyer, Inc., 590 So.2d 882 (Ala.1991).”
Thus we review the trial court’s order requiring VLE to reimburse CPSI $2,107.20 for its travel expenses associated with the canceled November 3 depositions to determine if the trial court exceeded its discretion.
VLE argues that the rescheduling of the depositions was necessitated by a “bona fide business crisis” and that it, accordingly, should have received some scheduling consideration from the trial court. The alleged business crisis was that VLE’s parent company, Dynacq, was facing a November 14, 2005, deadline to file forms with the SEC, and, VLE alleges, the individuals scheduled for deposition were needed to help prepare those forms.
In fact, the record reveals that the trial court afforded VLE a great deal of scheduling consideration. One month before the original September 15, 2005, trial date, the trial court, on VLE’s motion, continued the trial for two months until November 17, 2005, so that VLE officials could work to prepare the corporate filings. When the depositions of VLE’s representatives scheduled for October 25, 2005, were canceled because of unrelated litigation and CPSI sought to have the depositions rescheduled in Alabama, the trial court denied CPSI’s request and reset the depositions for November 3 in Texas. When VLE then moved to postpone the November 3 depositions, the trial court gave it the option of either continuing with the depositions as scheduled or canceling them, reimbursing CPSI for its travel expenses, and rescheduling the depositions in Alabama. VLE chose not to produce its representatives for the November 3 depositions in Texas, and the trial court followed through in its November 7 order and sanctioned VLE by ordering it to reimburse CPSI for its nonrefundable travel expenses.
Considering the fact that the trial court expressly warned VLE of the consequences if it elected not to proceed with the November 3 depositions, and in light of the previous scheduling consideration afforded VLE, we conclude that the trial court did not exceed its discretion by sanctioning VLE and requiring it to reimburse CPSI $2,107.20 for expenses for the canceled depositions.
IV.
Because VLE was involved in an ongoing business and contractual relationship with CPSI, an Alabama corporation, and because of the activities undertaken by VLE as part of that relationship — including traveling to Alabama, telephoning CPSI in Alabama, and mailing payments to CPSI in Alabama — we conclude that VLE is subject to suit here on matters related to that business relationship. Moreover, we also conclude that the trial court acted within its discretion in imposing sanctions on VLE. For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.

. During this same approximate time period, VLE placed nine additional orders with CPSI for supplies, materials, and equipment that were unrelated to the computer system that was the subject of the contract.

. In Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala.1998), this Court stated:
"General jurisdiction applies where a defendant's activities in the forum state are 'substantial' or 'continuous and systematic,’ regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.”
(Citing Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).)

. Although the evidence as to how VLE and CPSI first came in contact with each other is disputed, it indicates that it was VLE that reached out to CPSI in Alabama after becom *1177 ing unsatisfied with the HMS system it first purchased. Which party initiates a sale or contract is not controlling, but it is "[o]f particular relevance.” Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459, 465 (Ala.2003).