*701
 
 BRYAN, Judge.
 

 The Alabama Department of Public Safety (“the Department”) appeals from a judgment of the Montgomery Circuit Court reversing an administrative order finding Leon Albert Prince to be subject to the Community Notification Act, § 15-20-20 et seq., Ala.Code 1975 (“the CNA”). We reverse and remand.
 

 In 1991, Prince was convicted of carnal knowledge of a girl less than 12 years old, in violation of § 398, Title 14, Ala.Code 1940 (Recomp.1958). Prince was incarcerated in state prison, and he was released from incarceration in November 2006. In February 2007, the Department notified Prince by letter that he is not subject to the CNA.
 
 [1]
 
 However, in December 2007, the Department notified Prince by letter that, upon further review of his file, he is indeed subject to the CNA.
 

 Prince sought administrative review of the Department’s decision that he is subject to the CNA. That review was governed by the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975 (“the AAPA”). The administrative review constituted a contested case under the AAPA.
 
 See
 
 § 41-22-3(3), Ala.Code 1975 (defining a “contested case,” in part, as “[a] proceeding ... in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing”). Typically, that review would have been conducted by an administrative law judge (“ALJ”) working in the administrative hearings division of the Office of the Attorney General. However, because the attorney general decided to personally represent the Department in Prince’s case, all the ALJs in the administrative hearings division of the Office of the Attorney General recused themselves. In January 2008, Jack Curtis, general counsel for the Department, sent a letter to Julia Weller, an ALJ employed by the Alabama Department of Personnel, asking Weller to hear Prince’s administrative review. The letter to Weller stated, in pertinent part: “We are requesting on behalf of the Attorney General’s office, who will be presenting this case[,] that you ... preside over the due process hearing for [Prince].” Weller agreed to preside over Prince’s case.
 

 Two days before the administrative hearing was held, Prince filed a motion seeking Weller’s recusal as the ALJ in his case. In his motion, Prince asserted that Weller “is subject to the authority, direction and discretion of the Attorney General.” Therefore, Prince argued, Weller was disqualified from hearing his case pursuant to § 41-22-18(a), Ala.Code 1975, which provides, in pertinent part: “No individual who participates in the making of any proposed order or final decision in a contested case shall .... be subject to the authority, direction or discretion of any person who has prosecuted or advocated in connection with that contested case.... ” Weller denied Prince’s motion seeking re-cusal on the grounds that it had been untimely filed and that she was not employed by the Office of the Attorney General. Weller subsequently presided over Prince’s contested-case hearing. Following the hearing, Weller issued an order upholding the Department’s decision that Prince is subject to the CNA.
 

 Prince appealed the order to the circuit court, pursuant to § 41-22-20, Ala.Code 1975. Prince filed in the circuit court a motion seeking judicial review of the denial by Weller of Prince’s motion for recusal.
 
 *702
 
 In that motion, Prince sought an order determining that the hearing conducted before Weller had violated § 41-22-18(a) and had denied him due process under both the Alabama- Constitution and the United States Constitution.
 
 [2]
 
 In response to Prince’s motion, the Department submitted Curtis’s affidavit. In his affidavit, Curtis testified that, as general counsel for the Department, he oversees all legal matters affecting the Department. Curtis stated that, after all the ALJs who would have typically heard a case such as Prince’s had recused themselves, Curtis learned that Weller had agreed to hear Prince’s case. Curtis stated that he did not recall from whom he had learned that information. Curtis testified that, as “a matter of course,” he then wrote the letter to Weller requesting that she conduct Prince’s hearing. He stated that he did not recall anyone in the Office of the Attorney General asking him to write the letter to Weller.
 

 The Department also submitted the affidavit of Alice Ann Byrne, general counsel for the Alabama Department of Personnel, in response to Prince’s motion for recusal. In her affidavit, Byrne testified, in pertinent part:
 

 “In January of 2008, due to the recusal [of all the ALJs working in the administrative hearings division of the Office of the Attorney General], I was contacted by the Department ... inquiring] about the appropriate procedure for appointing an [ALJ] to hear a case concerning the [CNA]. I informed [the Department] that they could hire an outside lawyer through contract, or send a request to our Chief Administrative Law Judge, ... Weller[,] who, if she were available, would request approval from the State Personnel Director to handle the case.
 

 “... [0]n January 23, 2008, a letter from Jack Curtis, General Counsel of the Department ..., was sent to ... Weller requesting that she serve as the ALJ on the case. On January 25, 2008, State Personnel Director Jackie Graham approved the request....”
 

 Byrne testified that, at the time Weller presided over Prince’s case, Weller “was employed by the State Personnel Department and was not subject to the direction, authority, or control of the Office of the Attorney General.”
 

 In June 2009, the circuit court entered a judgment determining that Prince’s due-process rights had been violated by Weller’s hearing his case. Therefore, the circuit court’s judgment concluded that Weller should have recused herself from Prince’s case, and, on that ground, it reversed the order issued by Weller upholding the Department’s decision that Prince is subject to the CNA. Accordingly, the circuit court’s judgment did not address the substantive issue of whether Prince is indeed subject to the CNA. The Department subsequently filed an appeal to this court, pursuant to § 41-22-20, Ala.Code 1975.
 

 Based on the circuit court’s finding that Prince’s right to due process was violated by Weller’s nonrecusal, that court apparently reversed Weller’s order under the authority of § 41 — 22—20(k)(l), Ala. Code 1975, which permits a circuit court to reverse an agency action made in violation of constitutional provisions. “This court reviews a circuit court’s judgment without a presumption of correctness because the
 
 *703
 
 circuit court is in no better position to review an agency’s decision than this court.
 
 Clark v. Fancher,
 
 662 So.2d 258, 261 (Ala.Civ.App.1994).”
 
 Alabama Bd. of Nursing v. Peterson,
 
 976 So.2d 1028, 1033 (Ala.Civ.App.2007). “[T]here is no presumption of correctness afforded to [an administrative decision maker’s] legal conclusions or its application of the law to the facts.”
 
 Medical Licensure Comm’n of Alabama v. Herrera,
 
 918 So.2d 918, 926 (Ala.Civ.App.2005).
 

 On appeal, the Department first argues that the circuit court erred in concluding that Prince’s right to due process had been violated by Weller’s failure to recuse herself from his case. The Department argues that Prince did not establish that his right to due process had been violated because, the Department says, Prince did not establish that Weller had actual bias in this case. Conversely, Prince, citing
 
 Caperton v. A.T. Massey Coal Co.,
 
 — U.S. —, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), argues that a showing of actual bias is not required to establish a violation of due process in this case. In
 
 Caperton,
 
 the United States Supreme Court stated that “there are objective standards that require recusal when ‘the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.’
 
 Withrow v. Larkin,
 
 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).” — U.S. at -, 129 S.Ct. at 2257. We find that, under either the “actual bias” standard argued by the Department or the objective standard focusing on the “probability of actual bias” argued by Prince, Prince has failed to establish that his right to due process was violated in this case.
 

 The United States Supreme Court has discussed the application of due process in the general context of a judge’s qualifications to hear a case:
 

 “[M]ost questions concerning a judge’s qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard.
 
 Aetna Life Ins. Co. v. Lavoie,
 
 475 U.S. 813, 828 (1986). Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. See,
 
 e.g., Aetna, id.,
 
 at 820-821;
 
 Tumey v. Ohio,
 
 273 U.S. 510, 523 (1927); 28 U.S.C. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(l)(a) (1980). But the floor established by the Due Process Clause clearly requires a ‘fair trial in a fair tribunal,’
 
 Withrow v. Larkin,
 
 421 U.S. 35, 46 (1975), before a judge with no actual bias against the defendant or interest in the outcome of his particular case. See,
 
 e.g., Aetna, supra,
 
 at 821-822;
 
 Tumey, supra,
 
 at 523.”
 

 Bracy v. Gramley,
 
 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997).
 

 The Department argues that, in the specific context of an administrative hearing, Prince must establish actual bias by Weller in order to establish a violation of due process. The Department’s position regarding the “actual bias” standard is explained in
 
 Bunke v. Alabama Board of Nursing,
 
 871 F.Supp. 1437, 1439 (M.D.Ala.1994):
 

 “ ‘[I]t is well settled in Alabama that due process must be observed by all boards as well as courts.’
 
 [Delavan v. Board of Dental Exam’rs of Alabama,
 
 620 So.2d 13, 16 (Ala.Civ.App.1993) ]. It is also well established that ‘[a]t a minimum, due process assures notice and a meaningful opportunity to be heard before a right or an interest is forfeited.’
 
 Johnson v. U.S.D.A.,
 
 734 F.2d 774, 782 (11th Cir.1984) (citing
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47
 
 *704
 
 L.Ed.2d 18 (1976)).... The courts have also noted that the requirement of a hearing is no guarantee of due process where the presiding officer is not neutral. As stated in
 
 Johnson,
 
 ‘[a] fair hearing requires an impartial arbiter.’
 
 Johnson,
 
 734 F.2d at 782,
 
 see also, Gibson v. Berryhill,
 
 411 U.S. 564, 578, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).
 

 [[Image here]]
 

 “Having set forth the importance of guaranteeing due process in administrative procedures, though, courts have also noted that while these hearings may be quasi-judicial, ‘[b]road discretion must be afforded in non-judicial administrative settings.’
 
 Delavan,
 
 620 So.2d at 16. This is especially so in cases such as this where the decisions of an administrative body such as the Nursing Board, are subject to judicial review. § 41-22-20(a)[, Ala.Code 1975],
 
 Smith v. Organ. of Foster Families for Equality and Reform,
 
 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977).
 

 [[Image here]]
 

 “Courts have held ... that it is the plaintiffs burden in [cases regarding whether a hearing officer should be disqualified on due-process grounds] to show actual bias on the part of the hearing officer.
 
 Burney v. Polk Comm. College,
 
 728 F.2d 1374, 1378 n. 11 (11th Cir.1984);
 
 Evers v. Brd. of Med. Examiners,
 
 516 So.2d 650, 654 (Ala.Civ.App.1987),
 
 appeal dismissed
 
 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988). Absent a showing of bias, the officer is presumed to be impartial.
 
 Schweiker v. Mc[Cl]ure,
 
 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed.2d 1 (1982),
 
 Johnson,
 
 734 F.2d at 783,
 
 Black v. City of Auburn,
 
 857 F.Supp. 1540, 1547 (M.D.Ala.1994). Bias is most readily apparent where the hearing officer has a pecuniary interest in the outcome of the matter.
 
 See, e.g., Gibson,
 
 411 U.S. at 578, 93 S.Ct. at 1697.”
 

 In this case, there is no evidence of actual bias by Weller against Prince. The circuit court’s judgment does not cite any alleged actual bias. Prince does not seem to argue that the record on appeal contains any evidence indicating that Weller was actually biased against him. Applying the “actual bias” standard advocated by the Department and explained in
 
 Bunke
 
 to Prince’s administrative proceeding, Prince did not establish that Weller’s failure to recuse herself violated his right to due process.
 

 Prince, however, argues that Weller’s failure to recuse herself violated his right to due process under the standard set forth by the Supreme Court in
 
 Caperton, supra.
 
 In
 
 Caperton,
 
 a jury in West Virginia returned a verdict against A.T. Massey Coal Company and its affiliates (collectively “Massey”) and in favor of Hugh Caperton and others (collectively “Caperton”). The jury awarded Caperton $50 million in damages. — U.S. at -, 129 S.Ct. at 2257. The Supreme Court recited the facts of
 
 Caperton:
 

 “Don Blankenship is Massey’s chairman, chief executive officer, and president. After the verdict but before the appeal, West Virginia held its 2004 judicial elections. Knowing the Supreme Court of Appeals of West Virginia would consider the appeal in the case, Blankenship decided to support an attorney who sought to replace Justice McGraw. Justice McGraw was a candidate for reelection to that court. The attorney who sought to replace him was Brent Benjamin.
 

 “In addition to contributing the $1,000 statutory maximum to Benjamin’s campaign committee, Blankenship donated almost $2.5 million to ‘And For The Sake Of The Kids,’ a political organiza
 
 *705
 
 tion formed under 26 U.S.C. § 527. The § 527 organization opposed McGraw and supported Benjamin. Blankenship’s donations accounted for more than two-thirds of the total funds it raised. This was not all. Blankenship spent, in addition, just over $500,000 on independent expenditures- — for direct mailings and letters soliciting donations as well as television and newspaper advertisements — ‘ “to support ... Brent Benjamin.” ’
 

 “To provide some perspective, Blankenship’s $3 million in contributions were more than the total amount spent by all other Benjamin supporters and three times the amount spent by Benjamin’s own committee. Caperton contends that Blankenship spent $1 million more than the total amount spent by the campaign committees of both candidates combined.
 

 “Benjamin won. He received 382,036 votes (53.3%), and McGraw received 334,301 votes (46.7%).”
 

 - U.S. at -, 129 S.Ct. at 2257 (citations to the record omitted).
 

 After Benjamin was elected, Caperton moved to disqualify him from considering Massey’s appeal, asserting a due-process violation and a violation of the West Virginia Code of Judicial Conduct. Justice Benjamin denied Caperton’s motion. — U.S. at -, 129 S.Ct. at 2257. The Supreme Court of Appeals of West Virginia subsequently granted review of the judgment entered on the jury verdict rendered against Massey. That court reversed the judgment entered on the jury verdict by a 3-2 vote, with Justice Benjamin voting with the majority. - U.S. at -, 129 S.Ct. at 2258.
 

 The United States Supreme Court in
 
 Caperton
 
 identified two circumstances in which that Court had previously required a judge’s recusal on due-process grounds: cases in which a judge has a financial interest, — U.S. at -, 129 S.Ct. at 2260, and certain types of cases involving criminal contempt. — U.S. at -, 129 S.Ct. at 2261-62. The Supreme Court stated that “[tjhese are circumstances ‘in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.’ ” — U.S. at -, 129 S.Ct. at 2259 (quoting
 
 Withrow v. Larkin,
 
 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Under such circumstances, the Supreme Court noted, “[t]he inquiry is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is ‘likely to be neutral, or whether there is an unconstitutional ‘potential for bias.’ ” - U.S. at -, 129 S.Ct. at 2262.
 

 In
 
 Caperton,
 
 the Supreme Court applied those principles “in the context of judicial elections” to determine if Caperton’s right to due process had been violated by Justice Benjamin’s failure to recuse himself. - U.S. at -, 129 S.Ct. at 2262. The Supreme Court continued:
 

 “The difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules. Otherwise there may be no adequate protection against a judge who simply misreads or misapprehends the real motives at work in deciding the case. The judge’s own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be grounds for appropriate relief. In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge’s determination respecting actual bias, the Due Process Clause has been implemented by objective standards that do not require proof
 
 *706
 
 of actual bias. See
 
 Tumey [v. Ohio],
 
 273 U.S. [510,] 532, 47 S.Ct. 437 [ (1927) ];
 
 Mayberry
 
 [v.
 
 Pennsylvania],
 
 400 U.S. [455,] 465-466, 91 S.Ct. 499 [(1971)];
 
 [Aetna Life Ins. Co. v.] Lavoie,
 
 475 U.S. [813,] 825, 106 S.Ct. 1580[ (1986) ]. In defining these standards the Court has asked whether, ‘under a realistic appraisal of psychological tendencies and human weakness,’ the interest ‘poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.’
 
 Withrow
 
 [v.
 
 Larkin],
 
 421 U.S., [35,] 47, 95 S.Ct. 1456 [ (1975) ].”
 

 — U.S. at -, 129 S.Ct. at 2263.
 

 The Supreme Court then stated that
 

 “there is a serious risk of actual bias— based on objective and reasonable perceptions — when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge’s election campaign when the case was pending or imminent. The inquiry centers on the contribution’s relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the election, and the apparent effect such contribution had on the outcome of the election.”
 

 - U.S. at -, 129 S.Ct. at 2263-64.
 

 The Supreme Court concluded that “Blankenship’s campaign contributions— compared to the total amount contributed to the campaign, as well as the total amount spent in the election' — had a significant and disproportionate influence on the electoral outcome.” — U.S. at -, 129 S.Ct. at 2264. In determining that Caper-ton’s right to due process had been violated by Justice Benjamin’s failing to recuse himself, the Court stated that “the risk that Blankenship’s influence engendered actual bias is sufficiently substantial that it ‘must be forbidden if the guarantee of due process is to be adequately implemented.’ ” — U.S. at ——, 129 S.Ct. at 2264 (quoting
 
 Withrow,
 
 421 U.S. at 47, 95 S.Ct. 1456).
 

 As Chief Justice Roberts noted in his dissent in
 
 Caperton,
 
 “it is unclear whether the new probability of bias standard [articulated by the Court’s majority in
 
 Caperton]
 
 is somehow limited to financial support in judicial elections, or applies to judicial recusal questions more generally.” — U.S. -, 129 S.Ct. at 2269 (Roberts, C.J., dissenting). It is unclear whether the “probability of bias” standard discussed in
 
 Caperton
 
 would apply to ALJs presiding over state administrative proceedings, the situation in this case. However, assuming, without deciding, that that standard applies here, it is clear that the facts of this case, when objectively viewed in light of “a realistic appraisal of psychological tendencies and human weaknesses,” fall short of those facts needed to establish “ ‘a risk of actual bias or prejudgment’ ” requiring Weller’s recusal on due-process grounds. — U.S. at -, 129 S.Ct. at 2263 (quoting
 
 Withrow,
 
 421 U.S. at 47, 95 S.Ct. 1456).
 

 In
 
 Caperton,
 
 the Supreme Court noted that
 
 Caperton
 
 was “an exceptional case” that presented “extreme facts.” — U.S. at -, -, 129 S.Ct. at 2263, 2265. The Court then cautioned that “Application of the constitutional standard implicated in this case will ... be confined to rare instances.” — U.S. at -, 129 S.Ct. at 2267. The facts of this case are not the “extreme facts” of
 
 Caperton.
 
 In Prince’s contested case, all the ALJs who would have typically heard a case such as his recused themselves because the attorney general had decided to personally represent the Department in the case. Consequently, Curtis, general counsel for the
 
 *707
 
 Department, wrote a letter to Weller, requesting, “on behalf of the Attorney General’s office,” that Weller hear Prince’s case. The undisputed evidence in this case indicates that Curtis wrote the letter “as a matter of course” and that he did not recall being asked by anyone from the Office of the Attorney General to write the letter. Comparing these relatively innocuous facts to the “extreme facts” in
 
 Caper-ton,
 
 it is evident that Prince has not established a probability of actual bias that is too high to be constitutionally tolerable. This case is simply not the “rare instance” in which due process demands that a judge or decision maker be disqualified from a case. Accordingly, we conclude that the circuit court erred in reversing Weller’s order on the ground that her failure to recuse herself violated Prince’s right to due process.
 

 Prince argues that, regardless of whether his constitutional right to due process was violated, we may affirm the circuit court’s judgment because, he says, § 41-22-18(a), Ala.Code 1975, required Weller to recuse herself from his case. Section 41-22-18(a) provides, in pertinent part: “No individual who participates in the making of any proposed order or final decision in a contested case shall .... be subject to the authority, direction or discretion of any person who has prosecuted or advocated in connection with that contested case....” As noted, the attorney general personally represented the Department in Prince’s contested case before Weller. However, the record
 
 does not
 
 establish that Weller was “subject to the authority, direction or discretion” of the attorney general in this case. In her affidavit, Byrne testified that Weller “was employed by the State Personnel Department and was not subject to the direction, authority, or control of the Office of the Attorney General”; that testimony is not directly disputed. Weller, in denying Prince’s motion for recusal, stated that she was not employed by the Office of the Attorney General. Prince seems to argue that because in his letter Curtis asked, “on behalf of the Attorney General’s Office,” that Weller handle Prince’s case, Weller was then “subject to the authority, direction or discretion” of the attorney general. However, we do not read Curtis’s letter as establishing the necessary “authority, direction or discretion” required to implicate § 41-22-18(a), especially in light of Byrne’s undisputed testimony indicating that Weller did not work for the attorney general. Section 41-22-18(a) does not require Weller’s recusal in this case.
 

 Accordingly, we reverse the judgment of the circuit court reversing Weller’s order determining that Prince is subject to the CNA, and we remand the case for further proceedings consistent with this opinion. We emphasize that Weller’s order remains in place pending the circuit court’s resolution of the substantive merits of Prince’s appeal to the circuit court,
 
 ie.,
 
 whether Weller correctly determined that Prince is subject to the CNA.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . The CNA was enacted in 1996 "to protect communities and their most vulnerable citizens, children, from the proven danger of recidivism by criminal sex offenders.”
 
 Salter v. State,
 
 971 So.2d 31, 37 (Ala.Civ.App.2007).
 

 [2]
 

 . Our supreme court "has consistently interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution.”
 
 Vista Land & Equip., L.L.C. v. Computer Programs & Sys., Inc.,
 
 953 So.2d 1170, 1174 (Ala.2006).